## Edward Chope et al. v. Charles A. Lorman.

*Estoppel.* A lease, with a reservation, which afterwards becomes the subject of an agreement between the lessor and a third party, in which the lessee has no interest, may be admissible in evidence to show the character of that agreement; but it will not operate to bind the lessor by way of estoppel in favor of the third party.

*Heard and decided May 3.*

Error to Wayne Circuit.

This was an action of trespass brought by Chas. A. Lorman against Edward Chope, Frederick L. Seitz, Henry Seitz and Michael Stauch, for entering upon the premises of the plaintiff and cutting and carrying away a thousand tons of ice.

On the trial the plaintiff having introduced evidence of the ownership and possession of the *locus in quo,* and that the ice was cut under the direction of the defendants; the defendants offered in evidence an agreement, of which the following is a copy:

"Memorandum of agreement made this fourth day of June, A. D. 1866, between the Detroit Ice Company, by C. A. Lorman, superintendent, and Henry E. Benson, of Detroit, as follows: The said Detroit Ice Company agrees to lease and does hereby rent and lease to the said H. E. Benson, for the purpose of booming and storing saw logs and poles, all the Detroit river front in the township of Hamtramck, described as follows: commencing at the Peninsular Brewery, or at the east line of J. L. King's lot, and extending three hundred feet below the ice houses belonging to the said Ice Company, to the east line of the Howard and Doughty land, being in all about eight hundred feet in length, for the term of five years from October last. Also part of what is called the Burt front, extending one hundred feet below the east line of the Howard and Doughty land. This last one hundred feet is for the same length of time (5 years), provided the property is not sold or leased to some other party than the Messrs. Burt, but if sold, to be given up, on due notice, if no arrangements can be made with the purchaser.

The upper part of said boom, extending from the Peninsular Brewery to the lower end of the ice houses above mentioned, is to be vacated by said H. E. Benson during the winter season, but he is to have possession of the remainder of the boom described, the whole year round for his own benefit and use, and should the length of the cribs of logs he may leave in the lower part extend twenty or even fifty feet above the lower end of the ice houses, they may be allowed to remain during the winter unmolested. And the said Ice Company agree to take care of the poles and chains left on the boom during the winter and leave them in the spring of each year in as good order as received. H. E. Benson to have the benefit of the use of the spiles driven by the said Lorman.

In consideration of the covenants and agreements made above by the said Ice Company, the said H. E. Benson hereby agrees to vacate during the winter of each year the boom leased by him from Fred. Mack, and give the said Ice Company the privilege of cutting ice in said boom for their own use and benefit each winter during the continuance of the lease now held by the said Benson. He also agrees to leave the boom poles hung on each of the booms during the winter for the benefit of said Ice Company."

There was also evidence to show that Benson went into possession of the premises described in the agreement, and that he and his assigns continued to use and were using the same up to the commencement of this suit, in accordance with the terms of said agreement; that they constructed booms, etc.; also that the Detroit Ice Company combined with the Lake St. Clair Ice Company, in January, 1868, and dissolved January 4, 1869; that at the time of the said combination, the said Detroit Ice Company sold, assigned and transferred all their rights in all their leases and water fronts on the Detroit River in Hamtramck, Wayne County, to said combination, that upon the dissolution the Detroit Ice Company leased all the premises it

owned, and assigned all its leases and rights to water fronts on the Detroit River in Hamtramck to Fred. L. Seitz, for the term of five years, from December 21st, 1868, and that the Lake St. Clair Ice Company made a like assignment and transfer to Fred. L. Seitz; and that the reason of the term commencing December 21, 1868, was, that it might expire at a convenient period of the year; and that from January, 1868, until the said dissolution, the said F. L. Seitz was manager and treasurer of said combined company, and plaintiff and Henry Seitz were superintendents.

Defendants also introduced evidence to show that they did not cut the ice in question, but that if it was cut, it was done by the combination; also that the said combination had possession of said premises at the time of the alleged trespass, by virtue of said Benson agreement.

The plaintiff, in rebutting, introduced evidence to show that the Detroit Ice Company and the Lake St. Clair Ice Company consolidated in January, 1868, and dissolved December 21, 1868, and that the plaintiff never acted as superintendent of the consolidated company after December 21, 1868.

The counsel for defendants requested the Court to charge the jury as follows, viz:

" *First* — To sustain an action of trespass plaintiff must either have the actual possession, or be entitled to the immediate possession of the premises at the time of the trespass; which was so charged.

" *Second*—It must appear that the act was done without the permission or consent of the plaintiff; and which was so charged.

" *Third*—If the plaintiff as superintendent executed a lease on behalf of the Detroit Ice Company to Benson, by which lease the right to cut ice was reserved to the Detroit Ice Company for five years from 1865, then Lorman was estopped from denying that the said Ice Company had the right to such right, and therefore Lorman had not the right to the pos-

20 MICH.—P²。

session of the premises described in the declaration, when the said ice was cut, and cannot recover.

"To which the Court replied: 'I cannot charge that, gentlemen, there is no question but if Lorman executed this lease in the name of the Detroit Ice Company for the Ice Company, he executed it himself for property, and including in that property of his own even, over which the Ice Company had no control, and for which they had no lease, he is estopped, as against Mr. Benson, to say that is not the Company's property; and I don't think it would be an estoppel as between the Ice Company and himself; that therefore is refused;' and to which refusal to charge, the defendants, by his counsel, excepted.

"*Fourth*—If the Detroit Ice Company had the right to cut ice in front of the Lorman lot, and transferred that right, prior to the alleged cutting, to the Lake St. Clair and Detroit Ice Company, and that right existed at the time of cutting, and the ice was cut by the said Lake St. Clair and Detroit Ice Company, then plaintiff cannot recover.

"To which the Court replied: 'That is true, gentlemen of the jury, if the Detroit Ice Company had the right to cut the ice; if Mr. Lorman owning the property had given them the right to cut the ice; had given them a lease, so that they had a right to cut the ice at this time, and they had transferred the right to the Lake St. Clair Company, and the Lake St. Clair Ice Company cut the ice, of course, they would then have the same right the Detroit Ice Company would have; there would be no trespass, and the plaintiff cannot recover. The plaintiff claims they did not have the right. Now, if you shall find they did have the right, and they transferred that right to the Lake St. Clair Company, and the Lake St. Clair Company did the cutting, then, of course, the Lake St. Clair Company would be justified in doing the cutting, for they had the right to do it. If the Detroit Company had the right and trans-

ferred it, that would give the other party the right; but if the Detroit Company had not the right, they had nothing to transfer. If the Detroit Company had the right and they transferred it to the combined company, and the combined company did not do the cutting, but the defendants in this case did the cutting, that would give the defendants no right. In other words, the party that did the cutting must have the right from somewhere, or else it is a trespass.' To which charge, as given, the defendants by their counsel excepted.

" *Fifth*—The defendants by their counsel then requested the Court to instruct the jury as to the legal effect of the agreement executed by the Detroit Ice Company to H. E. Benson, offered in evidence by defendants.

Whereupon the Court instructed the jury as follows: " This paper ( the Benson lease ) of itself does not give the Detroit Ice Company any right to cut the ice on the seventy-five feet. The jury may take this into consideration with the other evidence to show that the lease was taken. It is only evidence tending to show." To which instruction the defendants by their counsel excepted.

The jury found a verdict for the plaintiff and the judgment entered thereon comes into this Court by writ of error.

*Wm. Jennison,* for plaintiffs in error.

I. The plaintiffs in error claim:

1st. That the Detroit Ice Company having executed the lease of the premises in question to Benson through Lorman, their superintendent, and having reserved the use of the front in the winter seasons up to the time of the assignment, he, Lorman, is estopped from denying that they had the right to the control of the premises. This Court will therefore presume that said company had the lawful possession thereof.

2d. That having assigned all their rights to their leases and other water fronts to the new combination (of which plaintiff was also one of the superintendents); and said combination having leased all said rights in the said leases and river fronts to Frederick L. Seitz, the said Lorman is equally estopped from claiming any right to the premises as against defendants.—*30 New York, 519, 541; 7 Barb. 407; 38 Penn., St. 307; 3 Hill, 215; 18 N. Y., 392.*—The estoppel is annexed to the estate and runs with the land, and is binding on all claiming under it.—*1aylor's L. & T.* §§ *91, 92.*

II. The Court equally erred in the construction of the Benson lease to the jury.

We submit that the execution of the lease having been shown without dispute, and that Benson had entered into possession of the premises, and upon the performance of the conditions; and also that the assignees of the Detroit Ice Company were in possession of the premises at the time of the alleged cutting by virtue of said lease, it was the duty of the Court to have instructed the jury that the lease did or did not give the Detroit Ice Company the right to the possession of the water front in the winter season, and that if it did, and the company assigned the right, plaintiff could not recover.— *Wisner v. Davenport, 5 Mich., 504, 501; Curtis v. Martz, 14 Mich., 513.*

III. By the fourth. charge the Court erred in stating the law in trespass.

It will not be denied that the plaintiff below must have had the right to the possession at the time of the alleged cutting to maintain this suit, no matter what right the defendants possessed. If it be claimed, that the charge of the first request cured this error, we say that the effect of this charge was to neutralize it, and entirely mislead and confuse the jury, as was clearly the effect in this case. It was contradictory and inconsistent.—*3 G. and W. on N. Trials, 774, 792, 800; Curtis v. Martz, 14 Mich., 513; D. & M.*

*R. R. Co. v. Van Steinburgh, 17 Mich.,* 108 ; 19 *Miss.* (4 *Bennett* ) 529 ; 16 *Alabama,* 61 ; 1 *Metc.* ( *Ky.* ) 83.

*Geo. H. Prentis,* for defendant in error.

I. The defendant insists that the refusal to charge as requested, and the charge as given by the Court, in reply to the third request of plaintiffs in error, was correct.

1. Because, even although Lorman had included some of *his own* property in the lease made by him, as superintendent, to Benson, as shown by the lease, he was not estopped by said lease from saying that other parties, not claiming under either Benson or himself, and not claiming in accordance with the terms of said Benson lease, had no rights there.— *Graydon v. Church, 7 Mich., 36 ; Wright v. DeGroff, 14 Mich.,* 164.— 2. If the request to charge had been granted, and the charge given, it could have had no bearing upon the evidence submitted in the case, the only evidence being the lease itself; and if the charge was immaterial, the judgment ought not to be reversed.— *Lyell v. Sanbourn, 2 Mich., 109 ; People v. Reynolds, 2 Mich., 422 ; Clark v. Moore et al., 3 Mich., 55 ; Cummings v. Stone, 13 Mich.,* 70.

II. The fourth request of plaintiffs in error is subject to the same objection as the third: that it could have no bearing upon the evidence submitted in the case. *a.* It was in fact given. It can only be claimed that it was not given in substance and fact, from the Court using the following words: "If the Detroit Company had the right, and they transferred it to the combined company, and the combined company did not do the cutting, but the defendants in this case did the cutting, that would give the defendants no right; in other words, the party that did the cutting must have the right from somewhere, or else it is a trespass." *b.* This could not have been construed by the jury to mean that the plaintiff would necessarily be entitled to recover, even although the defendants were trespassers, as

the Court fully explained by the first and second requests; and if the jury were not misled, a new trial ought not to be granted.—*People v. Reynolds, 2 Mich., 422; People v. Scott, 6 Mich., 287; Angel v. Rosenbury, 12 Mich., 241.*

III.—The fifth request, as modified, if erroneous, was an error in favor of plaintiffs; in instructing the jury that the Benson lease was evidence tending to show the right to cut the ice.—*Parrott v. Shearer, 17 Mich., 48.*—And if an error in favor of plaintiffs, it ought not to be reviewed.— *Brigham v. Gurney, 1 Mich., 349; Lyell v. Sanbourn, 2 Mich., 109; Berry v. Lowe, 10 Mich., 9; M. M. Co. v. Nat. M. Co., 11 Mich., 186.*

In order to arrive at a conclusion in putting a construction upon this lease, it is necessary to consider two things: 1. What does the language used in the contract mean under a strict construction?—*Mallam v. May, 13 M. & W. 517; Gwillim v. Daniel, C. M. & R., 70; Robertson v. French, 4 East, 135; 2 Parsons Con. (5 ed.), p. 494.*— 2. The intention or meaning of the parties executing the contract at the time of execution.— *Quackenboss v. Lansing, 6 Johns., 50; Story on Con. (3 ed.), 633, 634; Karmuller v. Kratz, 18 Iowa, 352; M. R. W. Co. v. L. R. W. Co., Law Rep. 2 Eq., 524.*

PER CURIAM.

The Court below allowed the jury to give to the Benson agreement such weight, by way of admission, as they thought it deserved. But it cannot operate by way of estoppel here. Estoppels must be mutual, and plaintiffs in error do not claim under the lease or agreement in question, and cannot, therefore, set up any estoppel under it against Lorman. The instrument is not necessarily inconsistent with his private rights, and while, as against Benson and his grantees, he could not impeach the privileges secured by the lease, no one else could question his title by reason of anything in that arrangement.

Judgment must be affirmed with costs.